UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

FIRST DEFENSE NASAL SCREEN, CORP.,

Debtor.
_______________________________/

Chapter 11, Subchapter V

Case No.: 8:22-bk-1196-CED

AMY DENTON MAYER, as Postconfirmation Trustee for FIRST DEFENSE NASAL SCREEN CORP.,

Plaintiff,

Adv. P. No.:

vs.

Joseph Moore Sr., Joseph Moore Jr., Adam Humphrey, Alex Scott, Phyliss Scott, Alfred E. Cox, Bradley J. Parrent, Brandi Kinmonth, Richard Kinmonth, Brian Hooper, Lynn Hooper, Brian E. Ongley, Brittany Seabol, Bruce Vosguanian, Nancy Vosguanian, Chad Pickard, Kristine Pickard, Charles Johnson, Linsay Johnson, Charles Roberts, Wendy Roberts, Christopher Nizol, Constance Long, Daniel Hurst, Darren Miller, David Berlo, David Moore, David Thomas, Deborah Buchaklian, Dee Boya, Dennis Ryder, Mary Jane Ryder, Dennis Reling, Diego Arangopuerta, Donald Sheaffer, Deborah Sheaffer, Donald McBath Jr., Douglas Loyd, Stephanie Loyd, Duane Miller, Gloria Miller, Eric T. Grantham, Gary Wruble, Gene Hester, Janice Hester, Glen Nelson, Irene Nelson, Harry Buchakian, J. Jodeyne Higgins, Jacqueline Campbell, Sammy Campbell, James Love, Dominique Love, James Atkin,

James Mieze, James Scallon, James Zellmer, Jeannie Mongiello, Jimmy Hickman, Eileen Hickman, Joel Samon, John Nassif, Joyce Kaszubski, Justin Leiher, Nichole Leiher, Justin McQueen, Ken Seabol, Virgina Seabol, Kenneth R. Seabol II, Kim Hendricks, Kimberly Rifenburg, Kirt Demmler, Linda Seabol, Margaret Baldwin, Micah Rounds, Michael Novinski, Joni Novinski, Michael Munger, Karen Munger, Michael Bruneau, Michael Pappas, Michael Williams, Parker Small, Paul Tafalla, Kristi Tafalla, Paul Faszczewski, Perry Slater, Philip Davis, Terry Davis, Ralph Christian, Cynthia Christian, Randall Parrent, Raymond Billot, Richard Graves, Richard Koschatzky, Robert Moore, Robert Santiago, Ronald Mongiello, Simone Mongiello, Sammy Campbell Jr., Scott MacDonald, Sebastian Kazek, Shane Atkin, Shih-Wen Huang, Socrates Stavropoulos, Stephen Rawe, Laren Rawe, Steven Blank, Stuart MacCollom, Elaine MacCollom, Thomas Wright, Victoria Wright, Thomas Smolinksi, Thomas Williams, Tiffani Jarosz, Travis Holt, Melissa Holt, Vance Smith, Rene Smith, Wanda Seabol, Wendi Jennings, and William Jennings

Defendants,
______________________________/

## COMPLAINT

Amy Denton Mayer (the "**Postconfirmation Trustee**"), as the appointed Postconfirmation Trustee for First Defense Nasal Screen Corp. (the "**Debtor**"), hereby sues the Officers (as defined below), the Directors (as defined below), and the Shareholders (as defined below) of the Debtor for damages, and alleges the following:

## PRELIMINARY STATEMENT

1. The Postconfirmation Trustee seeks to avoid and recover from the Shareholders, as defined below, certain fraudulent transfers or improper distributions made by the Debtor or by

entities wholly owned by the Debtor and at the Debtor's direction to the Shareholders with respect to each Shareholder's equity interests in the Debtor. The Debtor transferred to or for the benefit of the Shareholders the amounts listed herein (the "**Shareholder Distributions**"), which are avoidable and recoverable by the Postconfirmation Trustee under 11 U.S.C. §§ 544, 548, and 550, and Florida Statutes §§ 607.06401, 607.0834, 726.105, 726.106, 726.108, and other applicable law.

2. Additionally, the Postconfirmation Trustee seeks damages from the Directors for approving and causing the improper Shareholder Distributions to be made by the Debtor while it was insolvent or as a result of which was rendered insolvent. The Postconfirmation Trustee also seeks damages against the Officers and Directors of the Debtor for their respective breaches of fiduciary duties owed to the Debtor, and especially with respect to authorizing and causing, or failing to prevent, the Debtor in improper Shareholder Distributions in violation of Florida law.

3. Finally, the Postconfirmation Trustee seeks a judgment holding that First Defense Holdings, LLC ("**FD Holdings**") and First Defense Operations, LLC ("**FD Operations**" and together with FD Holdings, the "**Subsidiaries**") are the alter egos of the Debtor. In the alternative, the Postconfirmation Trustee seeks to substantively consolidate the Subsidiaries with the Debtor.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, in that it is arises in and is related to the Chapter 11 case pending before this Court filed by the Debtor.

5. The subject matter of this Complaint is a core proceeding pursuant to 28 U.S.C. § 157(b).

6. The Court is authorized to enter final orders and judgments in this proceeding. The Postconfirmation Trustee consents to the entry of final orders and judgments by the Court in this proceeding.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

8. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 544, 548, 550, and 551; Florida Statutes §§ 607.06401, 607.0834, 726.105, 726.106, 726.108; 28 U.S.C. § 1334; and Fed.R.Bankr.P. 7001(7).

## PARTIES

9. The Postconfirmation Trustee is the duly appointed postconfirmation trustee for the Debtor and the Debtor's estate pursuant to the *Order Confirming Chapter 11 Plan of Reorganization of First Defense Nasal Screen Corporation* (Bankr. Doc. No. 153) (the "**Confirmation Order**"). Pursuant to the Confirmation Order, the Postconfirmation Trustee has legal standing and authority to prosecute the Causes of Action, as defined by the Confirmation Order on behalf of the Debtor and the bankruptcy estate, including the claims and causes of action brought by this proceeding.

10. The Debtor is Florida corporation organized and existing under the laws of the State of Florida with a principal place of business in Pasco County, Florida.

11. First Defense Holdings, LLC ("**FD Holdings**") is a Florida limited liability corporation with its principal place of business as 7143 State Road 54, Suite 117, New Port Richey, Florida 34653. FD Holdings is a wholly-owned subsidiary of the Debtor and is listed on the Debtor's Schedules (as defined below) as an asset of the Debtor.

12. First Defense Operations, LLC ("**FD Operations**" and together with FD Holdings, the "**Subsidiaries**") is a Florida limited liability corporation with its principal place of business as

7143 State Road 54, Suite 117, New Port Richey, Florida 34653. FD Operations is a wholly-owned subsidiary of the Debtor and is listed on the Debtor's Schedules (as defined below) as an asset of the Debtor.

13. At all times relevant to this Complaint, Defendant Joseph K. Moore Sr. ("**Moore Sr.**") was an equity shareholder and President of the Debtor, the Manager of FD Operations, and the Manager of FD Holdings.

14. At all times relevant to this Complaint, Defendant Kenneth Seabol ("**Seabol**") was the Vice President of the Debtor.

15. At all times relevant to this Complaint, Defendant Ben Johnson ("**Johnson**") was the Secretary of the Debtor (Moore Sr., Johnson, and Seabol are collectively the "**Officers**").

16. At all times relevant to this Complaint, the following individuals were directors of the Debtor:

| **Name** | **Title / Position** |
|---|---|
| David Berlo | Director |
| Steven Blank | Director |
| Paul Faszczewski | Director |
| Richard Graves | Director |
| Brian Hooper | Director |
| Joseph K. Moore, Sr. | Director |
| Joseph K Moore, Jr. | Director |
| Michael Novinski | Director |
| Randy Parrent | Director |

(Collectively, the "**Directors**" and each a "**Director**").

17. In the Bankruptcy Case, the Debtor filed its List of Equity Security Holders – Amended (Bankr. Doc. No. 13), incorporated herein by refence and attached as **Exhibit A**, which lists each shareholder of the Debtor (collectively, the "**Shareholders**" and each a "**Shareholder**"), each Shareholder's address as known by the Debtor on the Petition Date, as defined below, and each Shareholder's respective percentage ownership in the Debtor.

## GENERAL FACTS

18. The Debtor sold nasal screens (the "**Nasal Screens**") that the Debtor marketed as self-adhesive nose filters that cover the nostrils and are used to protect individuals against pollutants, allergens, bacteria, and viruses.

19. In January 2020, the World Health Organization and the U.S. federal government declared a public health emergency with respect to the COVID-19 virus.

20. On March 19, 2020, the Debtor and Wellgistics, LLC ("**Wellgistics**") entered into an Exclusive Distribution Services Agreement (the "**Distribution Agreement**") for the distribution of the Nasal Screens. A copy of the Distribution Agreement is attached as **Exhibit B.** The Distribution Agreement includes a provision requiring disputes be submitted to binding arbitration.

21. Pursuant to the Distribution Agreement, Wellgistics agreed to purchase 2,500,000 units of the Nasal Screens per year from the Debtor at $2.75 per unit.

22. On March 19, 2020, pursuant to the Distribution Agreement, Wellgistics paid $3,486,250.00 to the Debtor for the purchase of Nasal Screens (the "**Wellgistics Payment**").

***The Arbitration Claims and Arbitration Award in Favor of Wellgistics***

23. On October 1, 2020, the Debtor commenced an arbitration against Wellgistics with JAMS, reference no 1460006863 (the "**Arbitration**"), for breach of contract, ostensibly for Wellgistics failure to "pay for the second half of its nearly $7 million order of 2.5 million units of [the Debtor's] nasal screen product." *See* Interim Award (defined below), p.2. Thereafter, Wellgistics asserted a counterclaim in the Arbitration against the Debtor for fraudulent inducement for the Distribution Agreement. Wellgistics also sought recission of the Distribution Agreement as a remedy for the fraudulent inducement.

24. After a nine-day arbitration, on February 28, 2022, the Hon. Joseph P. Farina, retired (the "**Arbitrator**"), entered an Interim Arbitration Award (the "**Interim Award**," attached as **Exhibit C**), which (i) denied the Debtor's breach of contract claim against Wellgistics, (ii) granted Wellgistics' counterclaim for fraudulent inducement, (iii) granted Wellgistics request for recission as the remedy for Debtor's fraudulent inducement, and (iv) awarded attorneys' fees, costs, and pre- and post-judgment interest for a total award amount of $4,642,878.65 (the "**Final Arbitration Award**"), which constitutes the damages suffered by Wellgistics.

25. The Final Arbitration Award, which was entered on May 10, 2022, is attached as **Exhibit D**.

26. In the Interim Award, the Arbitrator made the following determination regarding the credibility, frankness, and demeanor of the witnesses and particularly Moore Sr:

> The credibility, frankness and demeanor of witnesses were major concerns when making an award in this Arbitration. Specifically, comparing and contrasting Joe Moore's testimony ([the Debtor's] principal) with Brian Norton's and Joe Cooke's testimony (Wellgistics principals) was a significant consideration . . . [Moore Sr.'s] testimony was often not credible . . . Brian Norton's and Joe Cooke's testimony, on the other hand, was credible, consistent and reasonable throughout the Arbitration.

Interim Award p. 3. For example, the Arbitrator made the following observation about Moore Sr.'s credibility: "Moore's testimony concerning FDNS military sales during cross-examination captures the essence of much of Moore's testimony during the final hearing: whatever Moore says is a moving target, subject to change, at Moore's direction." Interim Award p. 57.

27. In the Interim Award, the Arbitrator found that the Debtor made the following representations, and that the Debtor's representations were knowingly false when made:

a. "On or about March 9, 2020, Olivo texted Quinn at Wellgistics asking whether Wellgistics would be interested in potentially distributing FDNS's nasal screen product." Interim Award p.4.

b. On March 9, 2020, Moore Sr. represented to Wellgistics in an email "that Amazon was 'buying 30k a week' of nasal screens from [the Debtor]." Interim Award p.5.

c. When asked for more information regarding the Debtor's current sales, Moore Sr. "repeatedly represented to [Wellgistics that the Debtor] was selling 8,000-12,000 packs of nasal screens per day on its retail website and 70,000-80,000 packs per week through Amazon." Interim Award, p. 5.

d. The Debtor represented to Wellgistics that the Debtor "sold several million packs of nasal screens worldwide every year before COVID." Interim Award, p. 6.

e. The Debtor represented to Wellgistics that it "had recently filled large orders and shipped hundreds of thousands or millions of packs of nasal screens to India and the Middle East." Interim Award, p. 6.

f. Marian, Inc., the Debtor's manufacturer, "was currently producing 300,000 packs of nasal screens per day." Interim Award, p. 6.

g. A "company affiliated with AmerisourceBergen, one of the 'Big Three' pharmaceutical distributors, was on the verge of placing a 2 million-unit purchase order, which Wellgistics would be able to fill if it signed an exclusive deal with [the Debtor] before the other company did." Interim Award, p. 6.

(among other representations identified in the Interim Award, the "**False Representations**").

28. The Arbitrator found that "Moore [Sr.]'s representations about [the Debtor's] sales were plainly false." Interim Award, ¶ 33.

> According to FDNS's reconciled sales records [Ex. 440], over the more than 11-week period from January 1, 2020, through March 19, 2020, FDNS sold a total of only 25,328 packs of nasal screens on its website or to Clear Lake, or about 320 packs per day, and 12,000 packs to Amazon, or 152 packs per day. During the not-quite three-week period from March 1, 2020, through March 19, 2020, leading up to the execution of the Agreement, FDNS sold only 13,282 packs of nasal screens on its website (including to Clear Lake), or 669 packs per day. In March 2020, according to FDNS's and Amazon's records [Ex. 174], Amazon only ordered 15 cases of 1,000 packs each (15,000 packs), or about 5,000 packs per week. Additionally, FDNS's records indicate that, from 2015 through when the parties executed the Agreement, FDNS sold only $160,000 worth of nasal screens to Amazon. [Ex. 440, entries for Amazon; Demonstrative Ex. 524B]. Regardless of how Moore interpreted Wellgistics's request for "current" sales data, Florida law does not permit him to make a partial disclosure of material fact and omit other material facts—such as the dearth of Amazon sales—while giving the impression of a full disclosure.

Interim Award, ¶ 33.

29. The Arbitrator found that Moore Sr. regularly inflated sales figures to various potential buyers and investors. *See* Interim Award, ¶¶ 33-36; 39-41. For example, the Arbitrator found that "Moore's representations about his 'millions' of annual worldwide sales 'every year' were false . . . the revenues—and losses—reported on FDNS's 2018 and 2019 P&L statements indicate that FDNS sold nowhere near the volume that Moore represented to Wellgistics during contract negotiations." Interim Award, ¶ 41.

30. The Arbitrator found that the Debtor's representations as to its manufacturing capabilities was false when made. Interim Award ¶¶ 48-50.

> Whether Moore meant to say that FDNS was currently manufacturing 300,000 packs per day or 300,000 pairs per day, his

> representation was false. According to Marian's manufacturing records, in 2014, the year in which it produced the greatest number of nasal screens, it produced only 2,840,411 pairs, or 7,782 pairs per day. [Ex. 449]. Lifetime (2006-2020), Marian only produced 27,982,198 pairs of screens, including for Wellgistics's order. [Exs. 449, 459]. Even if Marian had produced all those screens in just one calendar year instead of the 14 years it took, Marian would only have produced an average of 76,664 pairs of screens per day.

Interim Award ¶ 49.

31. The Arbitrator found that the Debtor's representations that a "company affiliated with AmerisourceBergen," a large pharmacy group, was pursuing the Debtor for an exclusive distribution deal with a 2 million-unit order was false when made. Interim Award ¶¶ 58-62. Specifically, Wellgistics later learned that the "AmerisourceBergen 'affiliate' was a company called NuParadigm and that NuParadigm had no intention of placing an order for 2 million packs of screens but, rather, was just looking to act as a broker." Interim Award ¶ 61.

32. The Arbitrator found that Wellgistics met its burden of proving that the Debtor had fraudulently induced Wellgistics, based on the False Representations, to enter into the Distribution Agreement with the Debtor (the "**Fraudulent Inducement**"). Interim Award ¶¶ 63-64. "Moore knew that the representations that he made to Wellgistics during contract negotiations were false and that he made those material misrepresentations with the intent of inducing Wellgistics to enter into the Agreement." Interim Award ¶ 64.

33. The Final Arbitration Award granted recission of the Distribution Agreement.

34. In large part because of the Shareholder Distributions, the Debtor had insufficient assets to pay the Final Arbitration Award.

***The Bankruptcy Case***

35. On March 25, 2022 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11, United States Code in the United States Bankruptcy Court

for the Middle District of Florida (the "**Bankruptcy Court**"), Case Number 8:22-bk-01196 (the "**Bankruptcy Case**").

36. Along with its petition filed in the Bankruptcy Case, the Debtor filed its Schedules and Statement of Financial Affairs (Bankr. Doc. No. 1) (the "**Schedules**"). The Schedules list FD Operations and FD Holdings as wholly owned entities of the Debtor. *See* Schedules A/B q.15.

37. On May 4, 2022, the U.S. Trustee's Office conducted the Meeting of Creditors Pursuant to Section 341 of the Debtor (the "**341 Meeting of Creditors**"), in which Moore Sr. testified as the Debtor's President. A copy of the transcript for the 341 Meeting of Creditors is attached as **Exhibit E**.

38. On February 27, 2023, the Bankruptcy Court confirmed the Debtor's *Second Amended Chapter 11 Small Business Subchapter V Plan* (Bankr. Doc. No. 127) (the "**Plan**") and entered its *Order Confirming Chapter 11 Plan of Reorganization of First Defense Nasal Screen Corporation (DE 127)* (Bankr. Doc. No. 153) (the "**Confirmation Order**"). Pursuant to the Confirmation Order, the Debtor preserved rights, claims, and causes of action of the estate, including actions under Chapter 5 of the Bankruptcy Code for the benefit of the Debtor's estate (the "**Causes of Action**"). *See* Confirmation Order at 4(b). Amy Denton Mayer was appointed as the Postconfirmation Trustee to investigate and pursue the Causes of Action.

***The Wrongful Distributions***

39. The Debtor engaged in a series of fraudulent transfers that are avoidable and recoverable under Chapter 726 of the Florida Statutes or under any other applicable law, which transfers caused a resulting loss and/or depletion of the Debtor's assets.

40. With full knowledge of the False Representations and the Fraudulent Inducement and almost immediately after receipt of the Wellgistics Payment, the Debtor disbursed to the Shareholders the distributions:

| **Shareholder(s)** | **Date of Transfer** | **Distribution Amount** |
|---|---|---|
| Adam Humphrey | 3/30/2020 | $2,000.00 |
| Alex and Phyliss Scott | 3/26/2020 | $2,000.00 |
| Alfred E. Cox | 4/3/2020 | $10,000.00 |
| Bradley J. Parrent | 3/27/2020 | $3,000.00 |
| Brandi and Richard Kinmonth | 3/26/2020 | $3,000.00 |
| Brian and Lynn Hooper | 3/30/2020 | $1,000.00 |
| Brian E. Ongley | 3/25/2020 | $3,000.00 |
| Brittany Seabol | 3/26/2020 | $1,000.00 |
| Bruce and Nancy Vosguanian | 4/6/2020 | $2,000.00 |
| Chad and Kristine Pickard | 3/26/2020 | $5,000.00 |
| Charles and Linsay Johnson | 3/26/2020 | $20,000.00 |
| Charles and Wendy Roberts | 4/13/2020 | $4,000.00 |
| Christopher Nizol | 3/25/2020 | $1,000.00 |
| Constance Long | 3/26/2020 | $5,000.00 |
| Daniel Hurst | 3/30/2020 | $3,000.00 |
| Darren Miller | 3/25/2020 | $1,000.00 |
| David Berlo | 3/25/2020 | $25,000.00 |

| **Shareholder(s)** | **Date of Transfer** | **Distribution Amount** |
|---|---|---:|
| David Moore | 4/3/2020 | $1,000.00 |
| David Thomas PHD | 4/6/2020 | $2,000.00 |
| Deborah Buchaklian | 3/30/2020 | $10,000.00 |
| Dee Boya | 3/31/2020 | $3,000.00 |
| Dennis and Mary Jane Ryder | 4/16/2020 | $12,000.00 |
| Dennis Reling | 3/27/2020 | $2,000.00 |
| Diego Arangopuerta | 3/27/2020 | $6,000.00 |
| Donald and Deborah Sheaffer | 3/27/2020 | $5,000.00 |
| Donald McBath Jr. | 3/31/2020 | $10,000.00 |
| Douglas and Stephanie Loyd | 3/26/2020 | $8,000.00 |
| Duane and Gloria Miller | 4/1/2020 | $1,000.00 |
| Eric T. Grantham | 3/27/2020 | $10,000.00 |
| Gary Wruble | 3/26/2020 | $1,000.00 |
| Gene and Janice Hester | 4/20/2020 | $30,000.00 |
| Glen and Irene Nelson | 4/8/2020 | $5,000.00 |
| Harry Buchakian | 3/30/2020 | $10,000.00 |
| J. Jodeyne Higgins | 4/27/2020 | $8,000.00 |
| Jacqueline & Sammy Campbell | 3/25/2020 | $15,000.00 |
| James and Dominique Love | 3/30/2020 | $1,000.00 |
| James Atkin | 3/26/2020 | $5,000.00 |

| **Shareholder(s)** | **Date of Transfer** | **Distribution Amount** |
|---|---|---|
| James Mieze | 4/8/2020 | $1,000.00 |
| James Scallon | 3/30/2020 | $1,000.00 |
| James Zellmer | Unknown | $1,000.00 |
| Jeannie Mongiello | 4/24/2020 | $15,000.00 |
| Jimmy and Eileen Hickman | 3/25/2020 | $5,000.00 |
| Joel Samon | 3/31/2020 | $1,000.00 |
| John Nassif | 3/25/2020 | $2,500.00 |
| Joseph Moore Jr. | 3/23/2020 | $5,000.00 |
| Joseph Moore Sr. | Various | $924,619.00 |
| Joyce Kaszubski | 3/31/2020 | $3,000.00 |
| Justin and Nichole Leiher | 3/26/2020 | $15,000.00 |
| Justin McQueen | 3/30/2020 | $5,000.00 |
| Ken and Virgina Seabol | 3/25/2020 | $35,000.00 |
| Kenneth R. Seabol II | 4/7/2020 | $1,000.00 |
| Kim Hendricks | 3/26/2020 | $5,000.00 |
| Kimberly Rifenburg | 3/26/2020 | $500.00 |
| Kirt Demmler | 3/25/2020 | $10,000.00 |
| Linda Seabol | 4/10/2020 | $2,000.00 |
| Lynn Hooper | 3/31/2020 | $1,000.00 |
| Margaret Baldwin | 3/25/2020 | $1,000.00 |

| Shareholder(s) | Date of Transfer | Distribution Amount |
|---|---|---|
| Micah Rounds | 3/26/2020 | $3,500.00 |
| Michael and Joni Novinski | 3/26/2020 | $4,000.00 |
| Michael and Karen Munger | 3/25/2020 | $3,000.00 |
| Michael Bruneau | 3/27/2020 | $9,000.00 |
| Michael Pappas | 4/6/2020 | $1,000.00 |
| Michael Williams | 4/2/2020 | $1,000.00 |
| Parker Small | 8/25/2020 | $2,500.00 |
| Paul and Kristi Tafalla | 6/8/2020 | $2,000.00 |
| Paul Faszczewski | 3/31/2020 | $2,000.00 |
| Perry Slater | 3/26/2020 | $5,000.00 |
| Philip and Terry Davis | 3/30/2020 | $5,000.00 |
| Ralph and Cynthia Christian | 3/25/2020 | $10,000.00 |
| Randall Parrent | 3/27/2020 | $8,000.00 |
| Raymond Billot | 4/9/2020 | $1,000.00 |
| Richard Graves | 3/30/2020 | $5,000.00 |
| Richard Koschatzky | 3/30/2020 | $1,000.00 |
| Robert Moore | 3/30/2020 | $3,000.00 |
| Robert Santiago | 4/3/2020 | $10,000.00 |
| Robert Whitely | 4/9/2020 | $3,000.00 |
| Ronald & Simone Mongiello | 3/30/2020 | $30,000.00 |

| **Shareholder(s)** | **Date of Transfer** | **Distribution Amount** |
|---|---|---|
| Sammy Campbell Jr. | 4/9/2020 | $15,000.00 |
| Scott MacDonald | 4/15/2020 | $1,000.00 |
| Sebastian Kazek | 3/30/2020 | $5,000.00 |
| Shane Atkin | 3/26/2020 | $5,000.00 |
| Shih-Wen Huang | 3/26/2020 | $2,500.00 |
| Socrates Stavropoulos | 4/6/2020 | $7,000.00 |
| Stephen and Laren Rawe | 3/30/2020 | $5,000.00 |
| Steven Blank | 3/27/2020 | $5,000.00 |
| Stuart and Elaine MacCollom | 3/26/2020 | $2,000.00 |
| Thomas & Victoria Wright | 3/26/2020 | $5,000.00 |
| Thomas Smolinksi | 4/3/2020 | $5,000.00 |
| Thomas Williams | 3/30/2020 | $10,000.00 |
| Tiffani Jarosz | 3/30/2020 | $1,000.00 |
| Travis and Melissa Holt | 3/26/2020 | $1,000.00 |
| Vance and Rene Smith | 3/26/2020 | $4,000.00 |
| Wanda Seabol | 3/26/2020 | $5,000.00 |
| Wendi and William Jennings | 3/27/2020 | $5,000.00 |

(collectively, the "**Shareholder Distributions**" and each a "**Shareholder Distribution**").

41. Moore Sr. testified at the 341 Meeting of Creditors that (i) the Debtor had issued 2000 shares of the company (comprised of the Shareholders) and (ii) upon receipt of the money

from Wellgistics, the Debtor made the Shareholder Distributions at $500 a share. *See* 341 Meeting of Creditors Transcript 8:17-9:14.

42. Immediately after receiving the Wellgistics Payment, the Debtor made the Shareholder Distributions, including the issuance of checks to Shareholders on account of each Shareholder's interest in the Debtor. A copy of the check registry for the Shareholder Distributions is attached as **Composite Exhibit F**.

43. Within days of the receipt of the Wellgistics Payment, the Debtor transferred a total of $924,619.00 to Moore Sr. (the "**Moore Distribution**"). The Postconfirmation Trustee is without knowledge as to whether or what amount of the Moore Distribution is (i) a Shareholder Distribution, (ii) repayment of alleged loans by Moore Sr., or (iii) embezzlement or civil theft of the assets of the Debtor. Consequently, the Postconfirmation Trustee reserves the right to amend this Complaint to assert additional claims or damages against Moore Sr.

44. The Shareholder Distributions were not treated as salary or compensation but were treated as distributions to equity owners.

45. The Debtor did not receive any value, including any reasonably equivalent value, in exchange for the Shareholder Distributions.

46. At all relevant times herein, including at the time the Shareholder Distributions were made, the Debtor was engaged in or were about to engage in a business or a transaction for which the remaining assets of the Debtor was unreasonably small in relation to such business or transaction.

47. At all relevant times herein, including at the time the Shareholder Distributions were made, the Debtor intended to incur, or believed or reasonably should have believed that it

would incur, debts beyond its ability to pay as they became due, for example the Final Arbitration Award.

48. All conditions precedent to the filing of this action have been performed, waived, satisfied or have occurred.

**COUNT I**
**Unlawful Distributions Against Directors**

49. The Postconfirmation Trustee re-alleges paragraphs 1 through 48 as if fully set forth herein.

50. Pursuant to 11 U.S.C. § 544 and §§ 607.06401 and 607.0834, Florida Statutes, Postconfirmation Trustee seeks judgment against the Directors for liability for authorizing unlawful distributions from the Debtor within 2 years after the date on which the distribution of assets to shareholders was made.

51. For all times relevant in the Complaint, Moore Sr. exercised the duties and responsibilities of a director of the Debtor. To the extent that Moore Sr. was not a validly elected or appointed director of the Debtor, Moore Sr. was a *de facto* director who is subject to all duties and liabilities of a *de jure* director and whose actions were fully binding on the Debtor.

52. Florida law provides that a corporation may not make a distribution if after giving the distribution effect the corporation would not be able to pay its debts as they become due in the ordinary course of the corporation's activities and affairs, or if the corporation's total assets would be less than the sum of its total liabilities.

53. At the time that the Shareholder Distributions were made, the Debtor was not able to pay its debts as they become due in the ordinary course of the Debtor's activities and affairs, taking into account the Arbitration Award.

54. Alternatively, at the time that the Shareholder Distributions were made, the Debtor's total assets were less than the sum of its total liabilities, taking into account the False Representations leading inevitably to the Arbitration Award.

55. Upon information and belief, the Directors voted for or assented to the Shareholder Distributions, which were made in violation of § 607.06401 of the Florida Statutes.

56. In voting for or assenting to the Shareholder Distributions, the Directors did not perform their duties in compliance with § 607.0830 of the Florida Statutes.

57. To the extent that the Shareholder Distributions that were transferred to the Shareholders more than two years before the Bankruptcy Case was filed, the existence of the Shareholder Distributions was fraudulently concealed from creditors of the Debtor, because the distributions were made and authorized by the Directors and Officers acting as the sole control persons of the Debtor. For example, the Interim Arbitration Award was entered against the Debtor on February 28, 2022, which is less than two years after the transfers occurred, but the Debtor waited until March 25, 2022, to file the Bankruptcy Case, which is a few days more than two years after the Debtor received the Wellgistics Payment.

WHEREFORE, Postconfirmation Trustee demands the entry of judgment against the Directors for: (i) the amount of the Shareholder Distributions; (ii) pre-judgment and post-judgment interest and costs, and (iii) for any other relief the Court deems appropriate.

## COUNT II
## Avoidance and Recovery of Transfers Under Fla. Stat. §726.105(1)(a) and 11 U.S.C. § 550
## [Actual Fraudulent Intent]

58. The Postconfirmation Trustee re-alleges paragraphs 1 through 48 as if fully set forth herein.

59. Pursuant to 11 U.S.C. § 544 and Chapter 726, Florida Statutes, the Postconfirmation Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim.

60. Section 726.105(1)(a), Florida Statutes, provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor;

61. Further, under Chapter 726 of the Florida Statutes, the Postconfirmation Trustee may recover, for the benefit of the estates, the property transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

62. Pursuant to 11 U.S.C. § 550, to the extent that a transfer is avoided under 11 U.S.C. § 544, the Postconfirmation Trustee has the right to recover the property transferred or, if the Court so orders, the value of the property transferred, from the initial transferee of such transfer.

63. As found by the Arbitrator, the Debtor knowingly and fraudulently induced Wellgistics to enter into the Distribution Agreement and make the Wellgistics Payment.

64. The Shareholder Distributions were (i) transfers to insiders of the Debtor, (ii) transferred immediately after the Debtor incurred the substantial debt to Wellgistics, and/or (iii) the Debtor became insolvent as a result of the Shareholder Distributions.

65. Each of the Shareholders is the recipient of the respective Shareholder Distribution identified above, and the Postconfirmation Trustee is entitled to avoid and recover from the Shareholders the respective Shareholder Distributions.

WHEREFORE**,** the Postconfirmation Trustee demands judgment against the Shareholders: (i) avoiding the Shareholder Distributions and recovering the amount of those Shareholder Distributions from the Shareholders, respectively; (ii) for pre-judgment and post-judgment interest as allowed by law; and (iii) such other and further legal and equitable relief as the Court deems just and proper.

**COUNT III**
**Avoidance and Recovery of Transfers Under Fla. Stat. §726.105(1)(b) and 11 U.S.C. § 550**
**[Constructively Fraudulent Transfers]**

66. The Postconfirmation Trustee re-alleges paragraphs 1 through 48 as if fully set forth herein.

67. Pursuant to 11 U.S.C. § 544 and Chapter 726, Florida Statutes, the Postconfirmation Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim.

68. Section 726.105(1)(b), Florida Statutes, provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> * * *
>
> (b) without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (2) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

69. Further, under Chapter 726 of the Florida Statutes, the Postconfirmation Trustee may recover, for the benefit of the estates, the property transferred, or, if the Court so orders, the

value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

70. Pursuant to 11 U.S.C. § 550, to the extent that a transfer is avoided under 11 U.S.C. § 544, the Postconfirmation Trustee has the right to recover the property transferred or, if the Court so orders, the value of the property transferred, from the initial transferee of such transfer.

71. The Shareholders received payment of distributions on their equity interest in the Debtor.

72. The Shareholder Distributions constituted transfers made by the Debtor for which the Debtor did not receive reasonably equivalent value in exchange for the same.

73. At the time of the Shareholder Distributions, the Debtor had unsecured claims and were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, for example, the Arbitration Award.

74. On the date that the Debtor entered into the Distribution Agreement with Wellgistics and Wellgistics made the Wellgistics Payment, before the Shareholder Distributions were made, Wellgistics was a creditor of the Debtor which resulted in recission of the Distribution Agreement.

75. Immediately before the Debtor entered into the Distribution Agreement, the Debtor's assets were unreasonably small in relation to the obligations incurred in relation to and through the Distribution Agreement.

76. The Debtor knew or should have known that it would incur debts beyond its ability to pay as the debts came due and especially the Final Arbitration Award.

77. The Shareholders were either an initial transferee, or immediate or mediate transferee of such initial transferees and were otherwise a beneficiary of the transfers as described herein, for whose benefit the transfers were made and, as a result, the Postconfirmation Trustee is entitled to avoid and recover the transfers as voidable.

WHEREFORE**,** the Postconfirmation Trustee demands judgment against the Shareholders: (i) avoiding the Shareholder Distributions and recovering the amount of those Shareholder Distributions from the Shareholders; (ii) pre-judgment and post-judgment interest as allowed by law; and (iii) such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV
**Avoidance and Recovery of Transfers Under Fla. Stat. §726.106(1) and 11 U.S.C. § 550**
**[Constructive Fraud as to Present Creditors]**

78. The Postconfirmation Trustee re-alleges paragraphs 1 through 48 as if fully set forth herein.

79. The Postconfirmation Trustee sues the Shareholders to avoid and recover avoidable transfers pursuant to 11 U.S.C. § 544 and Chapter 726, *et. seq*., Florida Statutes.

80. Section 726.106(1), Florida Statutes, provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent in value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

81. Pursuant to 11 U.S.C. § 550, to the extent that a transfer is avoided under 11 U.S.C. § 544, the Postconfirmation Trustee has the right to recover the property transferred or, if the Court so orders, the value of the property transferred, from the initial transferee of such transfer.

82. The Shareholder Distributions constitute transfers made by the Debtor for which the Debtor did not receive reasonably equivalent value in exchange.

83. At the time of the Shareholder Distributions, the Debtor had unsecured claims and were insolvent, had their insolvency deepened, or became insolvent as a result of such transactions.

84. As a result of the Shareholder Distributions described herein, the Debtor has been damaged and pursuant to §726.106(1) of the Florida Statutes, may recover the total value of such transfers.

85. The Shareholders were either an initial transferee, or immediate or mediate transferee of such initial transferees and were otherwise a beneficiary of the transfers as described herein, for whose benefit the transfers were made and, as a result, the Postconfirmation Trustee is entitled to avoid and recover the transfers as voidable.

WHEREFORE**,** the Postconfirmation Trustee demands judgment against the Shareholders: (i) avoiding the Shareholder Distributions and recovering the amount of those Shareholder Distributions from the Shareholders; (ii) pre-judgment and post-judgment interest as allowed by law; and (iii) such other and further legal and equitable relief as the Court deems just and proper.

**COUNT V**
**Avoidance and Recovery of Fraudulent Transfers Under 11 U.S.C. §§ 548 and 550**

86. The Postconfirmation Trustee re-alleges paragraphs 1 through 48 as if fully set forth herein.

87. The Postconfirmation Trustee sues the Shareholders to avoid and recover avoidable transfers pursuant to 11 U.S.C. §§ 548 and 550.

88. Section 548 of the Bankruptcy Code, provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under

> an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> >
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >
> > (ii)
> >
> > > (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> > >
> > > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> > >
> > > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> > >
> > > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

89. Pursuant to 11 U.S.C. § 550, to the extent that a transfer is avoided under 11 U.S.C. § 544, the Postconfirmation Trustee has the right to recover the property transferred or, if the Court so orders, the value of the property transferred, from the initial transferee of such transfer.

90. The Shareholder Distributions constitute transfers made by the Debtor with the actual intent to hinder or delay creditors of the Debtor.

91. The Shareholder Distributions occurred shortly after the Debtor incurred significant debt in the form of the Distribution Agreement and the Wellgistics Payment.

92. Also or in the alternative, at the time of the Shareholder Distributions, the Debtor had unsecured claims and were insolvent, had their insolvency deepened, or they became insolvent as a result of the Shareholder Distributions, taking into account the Arbitration Award.

93. As a result of the Shareholder Distributions, the Debtor has been damaged and pursuant to 11 U.S.C. §§ 548 and 550, may recover the total value of such transfers.

94. The Shareholders were either an initial transferee, or immediate or mediate transferee of such initial transferees and were otherwise a beneficiary of the transfers as described herein, for whose benefit the transfers were made and, as a result, the Postconfirmation Trustee is entitled to avoid and recover the transfers as voidable.

WHEREFORE, the Postconfirmation Trustee demands judgment against Shareholders: (i) avoiding the Shareholders and recovering the amount of those Shareholder Distributions from Shareholders; (ii) pre-judgment and post-judgment interest as allowed by law; and (iii) such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VI
## First Defense Operations, LLC and First Defense Holdings, LLC Are Alter Egos of the Debtor, or in the Alternative, Substantively Consolidated With the Debtor

95. The Postconfirmation Trustee re-alleges paragraphs 1 through 48 as if fully set forth herein.

96. FD Operations and FD Holdings (the "**Subsidiaries**") are the alter egos of the Debtor.

97. For all times relevant in the Complaint, the Subsidiaries have no operations and do not conduct any business.

98. On April 18, 2022, the Debtor filed its *Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or*

*Controlling Interest* (Bankr. Doc. No. 29) for FD Operations, attached as **Exhibit G**, in which the Debtor stated that it owned 100% of the equity interest in FD Operations. The Debtor represented that FD Operations "is a pass through corporation setup to separate the IP of the company from the operations of the company. This corporation [sic] does not conduct separate business from the main corporation" and it "does not have separate books or financials." *Id.* (improper capitalization omitted). Further, the Debtor represented that its income is the "same as submitted through main corporation," and that it has no cash, no debts, and no claims against the Debtor. *Id.*

99. On April 18, 2022, the Debtor filed its *Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest* (Bankr. Doc. No. 30) for FD Holdings, attached as **Exhibit H**, in which the Debtor stated that it owned 100% of the equity interest in FD Holdings. The Debtor represented that FD Holdings "does not conduct any business or transactions and is a pass through company." *Id.* The Debtor further represented that FD Holdings has no income from any source, no cash, no debts, and no claims against the Debtor. *Id.*

100. The Subsidiaries are not parties to the Distribution Agreement.

101. FD Operations received the Wellgistics Payment into its account at Bank of America ending in 6377 (the "**6377 Account**").

102. FD Operations disbursed the Shareholder Distributions to the Shareholders of the Debtor from the 6377 Account.

103. The Subsidiaries are merely a vehicle for the personal interests of the Debtor.

104. The Subsidiaries were, in fact, shells.

105. The Subsidiaries were dominated by one person, the Debtor, through the virtue of ownership.

WHEREFORE, the Postconfirmation Trustee requests the entry of a judgment finding that the Subsidiaries are the alter egos of the Debtor, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT VII**
**In the Alternative, FD Holdings and FD Operations Must Be Substantively Consolidated with the Debtor**

106. The Postconfirmation Trustee re-alleges paragraphs 1 through 48, and 97-105 as if fully set forth herein.

107. As an alternative to the Alter Ego count, the Subsidiaries should be substantively consolidated with the Debtor entity.

108. There is a substantial identity between the Debtor and the Subsidiaries.

109. The consolidation is necessary to avoid harm to the Debtor and realize benefits to the estate; namely, to effectuate the avoidance of fraudulent transfers of property alleged in this Complaint.

110. The degree of difficulty in segregating and ascertaining the individual assets and liabilities are negligible because the assets and liabilities of the Subsidiaries are negligible or readily ascertainable.

111. The Subsidiaries and the Debtor use consolidated financial statements.

112. The Subsidiaries and the Debtor have the same corporate address: 7143 State Road 54, Suite 117, New Port Richey, FL 34653.

113. The Debtor is the sole owner of the Subsidiaries.

114. Upon information and belief, transfers of assets between the Debtor, the Subsidiaries, and/or with third parties are made without formal observation of corporate formalities.

115. There is no or minimal economic prejudice which would result from substantive consolidation.

WHEREFORE, in the alternative to the remedy sought through the alter ego count alleged herein, the Postconfirmation Trustee requests the entry of a judgment or other appropriate order substantively consolidating the Subsidiaries with the Debtor with the Debtor as the main entity.

**COUNT VIII**
**Breach of Fiduciary Duties of Officers and Directors**

116. The Postconfirmation Trustee re-alleges paragraphs 1 through 48 as if fully set forth herein.

117. The claims against the Officers and Directors arise out of and relate to breaches of their fiduciary duties based upon, among other acts and omissions, the False Representations and the Shareholder Distributions.

118. The Officers and Directors owed the Debtor fiduciary duties, including fiduciary duties of loyalty and care. These fiduciary duties required the Officers and Directors to place their personal interests behind the interests of the Debtor and the Debtor's creditors, and these duties required the Officers and Directors to avoid self-dealing for personal gain and conflicts of interest. The Officers and Directors were required to engage in proper oversight of the Debtor, to act diligently in the exercise of their responsibilities, to gather and become informed about all of the material facts and information related to any decisions and to otherwise use that amount of care which an ordinarily careful and prudent person would use in similar circumstances.

119. The Officers and Directors ignored their duties to the Debtor.

120. Specifically, the Officers and Directors failed to properly discharge their duties in good faith, acted with gross negligence and/or with reckless disregard of their respective duties,

acted in bad faith and/or engaged in willful misconduct, breached their implied covenant of good faith and fair dealing, all as detailed herein.

121. Upon information and belief, the Officers and Directors failed to maintain appropriate corporate formalities of the Debtor.

122. As a result of False Representations and the Shareholder Distributions, the Debtor was subjected to the Arbitration Award and had insufficient assets to satisfy it. As a result of the Shareholder Distributions, the Debtor was forced to file this Bankruptcy Case without the ability to pay their obligations in full. As a direct and proximate result of the making of the Shareholder Distributions, the Debtor has suffered damages that include, without limitation: (i) the loss or reduction of assets and the value of assets of the Debtor; (ii) the decrease in the asset values and enterprise value of the Debtor; (iii) the increased insolvency of the Debtor and the resulting claims against the Debtor; (iv) administrative fees and expenses incurred by the Debtor's bankruptcy estate; (v) the value of all avoidable transfers made by the Debtor pursuant to Chapter 726 of the Florida Statutes and other applicable law; and (vi) other damages as may be ascertained though discovery.

WHEREFORE, Postconfirmation Trustee demands the entry of judgment against the Officers and Directors for: (i) damages arising from the Officers' and Directors' breaches of fiduciary duties; (ii) pre-judgment and post-judgment interest and costs, and (iii) for any other relief the Court deems appropriate.

## RESERVATION OF RIGHTS

The Postconfirmation Trustee reserves the right to further amend this Complaint upon completion of her investigation and discovery in order to assert any additional claims for relief against the Defendants as may be warranted under the circumstances.

DATED: March 22, 2024.

*/s/ Mark F. Robens*
Daniel R. Fogarty (FBN 0017532)
Mark F. Robens (FBN 108910)
Stichter, Riedel, Blain & Postler, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida 33602-4718
Telephone: (813) 229-0144
Email: dfogarty@srbp.com
mrobens@srbp.com
Attorneys for Postconfirmation Trustee